IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

UNITED STATES OF AMERICA,

v.                                                    No. 1:26-cr-10034-JDB-1

ARACELY XONA US DE MALDONADO

MEMORANDUM OF OPINION

On July 17, 2026, a detention hearing was held, and the undersigned magistrate judge issued an oral ruling that Defendant Aracely Xona Us De Maldonado be granted pretrial release. The United States of America requested that the pretrial release order be stayed pending its appeal to the presiding district judge. The Government's request for a stay was granted, and the pretrial release order is hereby **STAYED** until **Friday, July 24, 2026,** at **noon CDT.** This Memorandum of Opinion recaps the reasoning for granting Defendant pretrial release.

I.

On June 8, 2026, a grand jury returned an Indictment charging Defendant with one count of violating 18 U.S.C § 1589(a) by forcing a minor, M.C., to provide labor under force or threat of force, and one count of violating 18 U.S.C. § 1001(a) by falsifying a legal document. (Docket Entry [D.E.] 2). Defendant was arrested and presented to the Court for her initial appearance on June 25, 2026. (D.E. 7). At her initial appearance, the Government moved for pretrial detention and Defendant was ordered temporarily detained pending a detention hearing. (D.E. 12, D.E. 13). The United States Probation Office filed a Pretrial Services Report on July 8, 2026. (D.E. 18). Defendant's detention hearing was scheduled for July 9, 2026, but, at the request of defense

1

counsel for additional time to prepare, the detention hearing was continued until July 17, 2026. (D.E. 19, D.E. 20).

At the July 17, 2026, detention hearing, the Government offered one witness, Special Agent Josh Lynch of the United States Department of Homeland Security. In summary, Special Agent Lynch testified that the alleged victim in this case, M.C., was an unaccompanied Guatemalan minor that entered the United States sometime around October of 2022. M.C. received the assistance of the Office of Refugee Resettlement ("ORR"), which is an office within the United States Department of Health and Human Services whose mission is to "promote[] the health, well-being, and stability of refugees, unaccompanied alien children, and other eligible individuals and families, through culturally responsive, trauma-informed, and strengths based services."[1] Defendant, who is a Guatemalan national residing in Union City, Tennessee, applied to be M.C.'s sponsor through the ORR. In the application process, Defendant affirmed that she would care for M.C, including providing housing, basic needs, schooling, etc. The ORR approved Defendant to serve as M.C.'s sponsor. Approximately one month after placing M.C. in Defendant's care, the ORR performed a check into the placement and noted that there were no problems. It is unclear when the placement or the checkup occurred as Special Agent Lynch was not the case agent and had merely reviewed the case file prior to his testimony; however, it appears to the undersigned that M.C. was placed into Defendant's care sometime in October of 2022 and that the checkup likely occurred sometime in November of 2022.

A few months later, perhaps in June of 2023, the Tennessee Department of Children's Services' ("DCS") hotline received a call from a person claiming to be "Ms. Ophelia" complaining about M.C.'s treatment. While it is unclear to the Court who "Ms. Ophelia" is, it appears that by

---

[1] *See* U.S. Department of Health & Human Services, Administration for Children & Families, Office of Refugee Resettlement, *About* (2026), https://acf.gov/orr/about.

June of 2023 M.C. had taken up residence with this person. According to the summary of the DCS call, Ms. Ophelia alleged that Defendant forced M.C. to work at a produce packing plant for $10.00 an hour, did not permit her to attend school, forced her to pay rent for her lodging, food, and clothing, and was forcing M.C. to reimburse her for approximately $3,000 in travel expenses. Investigators from DCS, local law enforcement, and the TBI met and interviewed the parties. According to the Special Agent Lynch, there was no finding that Defendant had physically abused M.C. It appears that no action was taken until, perhaps, a few months later when M.C. and/or Ms. Ophelia called the ORR seeking legal assistance in a case pending in juvenile court. Along with many other evidentiary holes, the Government presented no evidence as to the nature of this juvenile court proceeding or its outcome. No information was provided as to what, if anything, transpired in this matter from June of 2023 until Defendant was indicted three years later in June of 2026.

According to the Pretrial Services Report and proffer from the defense, Defendant is 35 years old and a native of Guatemala. She entered the United States in 2017 and was arrested by the U.S. Customs and Border Protection in McAllen, Texas for alien inadmissibility. There is currently a removal order against her and an active Immigration and Customs Enforcement ("ICE") detainer. She has resided in Union City for eight years, four of which have been at her current address. She has been employed as produce packer for five years and, previously, in a restaurant. She is the mother of five minor children who reside with her, and she is their caretaker.

II.

To order the detention of a defendant pending trial, a court must find that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the

3

safety of any other person and the community." U.S.C. § 3142(e). In making this determination, courts consider:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

> (2) the weight of the evidence against the person;

> (3) the history and characteristics of the person, including—

>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). A finding of detention must be supported by "clear and convincing evidence." 18 U.S.C. § 3142(f)(2)(B). "The default position of the law, therefore, is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010).

The Government sought Defendant's detention on grounds that she was both a flight risk and a danger to other persons or the community. Applying the Bail Reform Act factors set forth in 18 U.S.C. § 3142(g), the undersigned concludes that there are conditions that could be placed upon Defendant that would both reasonably assure that she returns for proceedings in this matter and to assure the safety of the other persons or the community.

**A.  Nature and Circumstances of the Offense Charged**

4

The first factor to consider is the nature and circumstances of the offense charged. 18 U.S.C. § 3142(g)(1). Relevant to this case, § 3142(g)(1) instructs courts to take into consideration whether the offense involves a minor victim. Here, the evidence presented at the detention does not weigh heavily for either release or detention. The testimony from Special Agent Lynch established that sometime between the unspecified time that the ORR checked in on M.C.'s placement with Defendant in which no problems were noted and the time—perhaps in June of 2023—when "Ms. Ophelia" contacted DCS, M.C. was being forced to work, make payments to Defendant, and not permitted to go to school. While these are very serious allegations, Special Agent Lynch also testified that there was no complaints or evidence that M.C. had suffered any physical harm from Defendant such as physical or sexual abuse. Furthermore, law enforcement officials from several agencies investigated the complaint "Ms. Ophelia" made and elected not to bring any criminal charges against Defendant at the time. Presumably if the investigators who initially responded to the DCS complaint found evidence of physical abuse, state criminal charges against Defendant would have been pursued. Thus, while Defendant's alleged labor and financial exploitation of M.C. is serious and troubling, the lack of any evidence or allegation of physical harm to M.C. causes the undersigned to find this factor to weigh neutral.

## B.    Weight of the Evidence

The second statutory factor is the weight of the evidence against the person. 18 U.S.C. § 3142(g)(2). "This factor goes to the weight of the evidence of dangerousness [or flight risk], not the weight of the defendant's guilt." *Stone*, 608 F.3d at 948; *see also United States v. Homedes*, No. 5:22-CR-00033, 2022 WL 822153, at *6 (E.D. Ky. Mar. 18, 2022) (noting that the (g)(2) factor looks "only toward the weight of flight risk evidence, not toward the weight of proof of Defendant's guilt").

Concerning Defendant's risk of flight, at the detention hearing, counsel and the Court discussed that there exists an ICE detainer and removal order against Defendant. Thus, the reality of this case is that Defendant will not leave the Government's custody upon execution of the July 17, 2026, order granting pretrial release without first dealing with her ICE detainer and any immigration proceedings to which she may be subject. Putting aside those pending immigration proceedings, the Court notes that while Defendant is a Guatemalan national, the events giving rise to this prosecution occurred between 2022 and 2023. Defendant was investigated at that time by state and local law enforcement officials. Defendant had over three years to flee to avoid prosecution and did not. Further, if Defendant was released by immigration officials, she could be placed on a location monitoring program and supervised by Pretrial Services to reasonably assure her appearance at court proceedings in this matter.

Turning to the weight of the evidence of dangerousness, the undersigned did not find that the Government presented any such evidence at the detention hearing. During the three-year period from when the alleged offense conduct was to have occurred until the grand jury indicted Defendant, there is no evidence that she has committed any crimes other than these indicted offenses. There is no evidence that she has attempted to or had any contact with M.C. or "Ms. Ophelia" or any other witnesses in this case. There is no evidence of any mental health or substance abuse.

Because there is no evidence to suggest that Defendant presents a danger to another person or the community, and because conditions could be placed upon her to reasonably assure that Defendant will appear for further proceedings in this case, this factor weighs in favor of release.

C.    **The History and Characteristics of the Person**

6

Under the third statutory factor, a court must consider the history and characteristics of the person, including "(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." 18 U.S.C. § 3143(g)(3).

Here, the evidence shows that Defendant is a 35-year-old Guatemalan national who has been residing in the United States since 2017 and in Union City for approximately eight years. She has resided in the same residence for the last four years. She has been married for 18 years and has five minor children that reside with her. Two of her children are United States citizens. It appears that Defendant has been continuously employed in manual labor jobs including produce packing and restaurant work. Defendant was found to be indigent and qualified for the appointment of counsel; thus, the Court has found that she has little to no financial resources. There is no evidence or indication that Defendant has any mental health or substance abuse issues. The only prior criminal history is her being charged with alien admissibility in 2017. The Pretrial Services report states that the "[d]ispostion and case number is unknown" (D.E. 18 at 3); however, Special Agent Lynch testified that Defendant is subject to an immigration removal order associated with that arrest. Based upon the paucity of information presented concerning any immigration proceeding that may have arose from the 2017 arrest, the undersigned cannot conclude that Defendant failed to appear for any proceedings that may have occurred, or that the alleged offense conduct in this case took place while she was under release in a proceeding as contemplated under § 3143(g)(3)(B). Thus, the third factor weighs in favor of release.

**D.     The Nature and Seriousness of the Danger to Any Person of the Community That Would Be Posed by the Person's Release**

The final factor to consider is the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(4). No evidence was presented to indicate that Defendant's release would pose a danger to any person in the community. Assuming that M.C. or, perhaps, "Ms. Ophelia", as the alleged victim and witness, could conceivably be placed at risk if Defendant is released, the Government's decision to wait three years to commence this prosecution completely undercuts that notion. The fourth factor therefore weighs in favor of release.

III.

For the reasons outlined above, the undersigned finds that the factors set forth in § 3142(g) of the Bail Reform Act favor Defendant being granted pretrial release. Because of Defendant's immigration status and the ICE detainer, the undersigned has not crafted any conditions of release that Defendant would be subject to while awaiting trial. In the event Defendant is to be released from ICE custody, the Government is to inform the Court so that conditions of pretrial release can be ordered prior to Defendant's release from custody.

Further, at the request of the Government, this July 17, 2026, oral order granting pretrial release is **STAYED** until **Friday, July 24, 2026** at **noon CDT.**

IT IS SO ORDERED, this the 20th day of July 2026.

<u>s/Jon A. York</u>
UNITED STATES MAGISTRATE JUDGE

**IF DESIRED, AN APPEAL OF THIS ORDER TO THE PRESIDING DISTRICT COURT JUDGE MUST BE FILED WITHIN FOURTEEN (14) DAYS OF THE SERVICE OF A COPY OF THIS ORDER. *SEE* 28 U.S.C. § 636(b)(1)(C); LOCAL RULE 72(g)(2). FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER**

**AND/OR FORFEITURE OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**